IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **GREG OSBORN** and **ADAM VIGIL**, individually and on behalf of all others similarly situated, | ) ) ) Case No. ) ) Judge ) |
| Plaintiffs, | ) ) |
| vs. | ) **COLLECTIVE AND CLASS ACTION** ) **COMPLAINT** |
| **AMERICAN LICORICE CO.**, | ) ) **JURY DEMAND ENDORSED HEREON** |
| Defendant. | ) |

Plaintiffs Greg Osborn and Adam Vigil ("Plaintiffs"), individually and on behalf of all others similarly situated, for their collective and class action Complaint against Defendant American Licorice Co. ("Defendant"), state and allege as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and the Indiana Wage Payment Statute, I.C. 22-2-5.

2. Plaintiffs bring this case as a collective action pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiffs bring this case on behalf of themselves and other "similarly situated" persons who may join this case pursuant to Section 216(b) (the "Opt-Ins").

3. Pursuant to Fed. R. Civ. P. 23, Plaintiff Osborn also brings this case as a Rule 23 class action under Indiana state law, including the Indiana Wage Payment Statute ("IWPS"), I.C. § 22-2-5-1, *et seq*.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over the Indiana state law claims pursuant to 28 U.S.C. § 1367, because the Indiana claims are so related to the FLSA claims that they form part of the same case or controversy.

6. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District and Division, and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and Division.

## PARTIES

7. Plaintiff Osborn is an adult individual residing in La Porte, Indiana (LaPorte County).

8. Plaintiff Vigil is an adult individual residing in Valparaiso, Indiana (Porter County).

9. Plaintiffs' written Consent to Join this Action are attached hereto as **Exhibit A**.

10. Plaintiffs were employed by Defendant as non-exempt employees who were paid on an hourly basis.

11. Plaintiff Osborn was employed by Defendant as a production line worker and machine operator from approximate 2018 until he resigned on or about March 18, 2021.

12. Plaintiff Vigil was employed by Defendant as a cook from approximately June to October 2020.

13. At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. § 203(e) and the IWPS.

14. Defendant is a for-profit Delaware Corporation that operates candy production facilities in La Porte, Indiana (La Porte County) and Union City, California. Defendant also does business as "Red Vines, a Division of American Licorice Co." Defendant can be served via its statutory agent: Tim Walsh, at 1914 Happiness Way, La Porte, IN 46350.

15. At all relevant times, Defendant has been an employer within the meaning of the FLSA and the IWPS.

16. At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

17. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

## FACTUAL ALLEGATIONS

18. Defendant manufactures, packages, distributes, and sells food products, in particular various candies, in Indiana and California.

19. Defendant employed Plaintiffs and those similarly situated as employees in its business of manufacturing, packaging, distributing, and selling food products.

20. Though Plaintiff Vigil and other similarly situated employees were originally placed at Defendant's Indiana facility by a temp agency, he and others similarly situated were sufficiently controlled by Defendant so as to make Defendant their joint employer under the FLSA and the IWPS.

21. For example, Defendant exercised operational control over significant aspects of the day-to-day functions of employees, including Plaintiffs and those similarly situated.

22. Defendant had authority to hire, fire and discipline employees, including Plaintiffs and those similarly situated.

23. Defendant had authority to set rates and methods of compensation of employees, including Plaintiffs and those similarly situated.

24. Defendant had authority to control the work schedules and employment conditions of employees, including Plaintiffs and those similarly situated.

25. Defendant had authority and control of employment records.

26. Defendant benefitted from the work performed by Plaintiffs and those similarly situated.

27. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §9, *et seq.* (hereinafter "FDCA").

28. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

29. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials **shall conform to hygienic practices while on duty** to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

(1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

(2) Maintaining adequate personal cleanliness.

(3) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

(4) Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

(5) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

(6) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

(7) Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

(8) Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

(9) Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

30. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. §110.10(d).

31. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

32. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

33. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

34. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

35. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

36. Thus, it would be impossible for Plaintiffs and those similarly situated, who were engaged in the manufacturing, packaging, and handling of food products, to perform their work duties unless they wore sanitary clothing and other protective equipment.

37. Indeed, if Plaintiffs and those similarly situated did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's products.

38. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting its employees to disregard federal and/or state food-safety laws.

39. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to wear sanitary and other protective equipment.

40. As a result, compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

41. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

42. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is a component of the work they are hired to do.

43. Unless Defendant's employees involved in the manufacturing, packaging, and handling of food comply with the GMPs, they cannot complete their work.

44. Therefore, the donning and doffing of sanitary clothing and other protective equipment, as well as handwashing, are integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food.

45. Because the donning and doffing of sanitary clothing and other protective equipment, and handwashing, are integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food, the time spent donning and doffing and handwashing are compensable work time within the meaning of the FLSA.

46. The donning of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' first principal activity of the day.

47. The doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' last principal activity of the day.

48. Plaintiffs were employed by Defendant during the last three years in its candy manufacturing facility in La Porte, Indiana. Plaintiffs' job duties involved the manufacturing, packaging, and handling of food products. Other similarly situated employees are and were employed

by Defendant during the last three years in the manufacturing, packaging, and handling of food, such as candies, at Defendant's La Porte, Indiana and Union City, California manufacturing facilities.

49. Because Plaintiffs and other similarly situated employees are involved in the manufacturing, packaging, or handling of food, in order to comply with the GMPs they must wear sanitary clothing and other protective equipment, including, but not limited to, sanitary clothing such as disposable smocks, hairnets, beard nets (as applicable) work boots, and bump caps.

50. Plaintiffs and other similarly situated employees were not permitted to take any of this sanitary clothing or protective equipment home. Rather, they were required to don them at work only, because of the risk of contaminating the production areas.

51. Plaintiffs and other similarly situated employees who are involved in the manufacturing, packaging, or handling of food cannot complete their work unless they are wearing sanitary clothing and other protective equipment.

52. Compliance with the GMPs by Plaintiffs and other similarly situated employees is integral and indispensable to the work they are hired to do.

53. Compliance with the GMPs by Plaintiffs and other similarly situated employees is a component of the work they are hired to do.

54. Compliance with the GMPs by Plaintiffs and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

55. The donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Plaintiffs and other similarly situated employees.

56. The donning and doffing of sanitary clothing and other protective equipment by Plaintiffs and other similarly situated employees is a component of the work they are hired to do.

57. The donning and doffing of sanitary clothing and other protective equipment by Plaintiffs and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

58. The donning of this sanitary clothing by Plaintiffs and other similarly situated employees was those employees' first principal activity of the day.

59. Likewise, at the end of their work shift, Plaintiffs and other similarly situated employees were required to remove, or doff, their sanitary clothing.

60. The doffing of sanitary clothing by Plaintiffs and other similarly situated employees is those employees' last principal activity of the day.

61. Plaintiffs and other similarly situated employees were non-exempt employees under the FLSA and were paid an hourly wage.

62. Since January 19, 2020,[1] Defendant required Plaintiffs and other similarly situated employees to don sanitary clothing and other protective equipment, and wash their hands, while at Defendant's facility, but prior to clocking in at the start of their shift. Plaintiffs and other similarly situated employees were not paid for this time.

63. Since January 19, 2020, Defendant required Plaintiffs and other similarly situated employees to wash their hands before entering the food manufacturing facility. Plaintiffs and other similarly situated employees were not paid for this time.

---

[1] Plaintiff Osborn filed an arbitration demand on January 19, 2023, and Plaintiff Vigil filed an arbitration demand on January 23, 2023. However, Defendant was unable to produce arbitration agreements for either, and neither Plaintiff recalls ever signing one. Accordingly, the relevant period for this Complaint runs from three years preceding the filing of Plaintiff Osborn's arbitration.

64. At the end of their scheduled shift, Plaintiffs and other similarly situated employees were required to clock out and then doff their sanitary clothing and other protective equipment. Plaintiffs and other similarly situated employees were not paid for this time.

65. Additionally, Plaintiffs and others similarly situated had to remove candy from the bottoms of their work boots. Removing candy was imperative for safety reasons, but Respondent typically required employees, including Plaintiffs and those similarly situated, to perform this work off the clock; that is, before or after their shifts, if not during the unpaid lunch breaks.

66. Also, when leaving for unpaid lunches, Plaintiffs and others similarly situated had to doff their sanitary clothing and other protective equipment, and when returning from unpaid lunches they had to don the gear and wash their hands. However, they were not paid for this compensable work that took place during the unpaid lunch time.

67. Additionally, Plaintiffs and others similarly situated had to remove candy from the bottoms of their work boots. Removing candy was imperative for safety reasons, but Respondent typically required employees, including Plaintiffs and those similarly situated, to perform this work off the clock; that is, before or after their shifts, if not during the unpaid lunch breaks.

68. Plaintiffs and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek during the statutory period starting from January 19, 2020, including donning and doffing time, associated travel, and, boot cleaning.

69. Plaintiffs and other similarly situated employees were not paid for all of the time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, associated travel, waiting time, and boot cleaning.

70. As a result of Plaintiffs and other similarly situated employees not being paid for all hours worked, Plaintiffs and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of 40 each workweek.

71. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and the IWPS. For example, managers and supervisors knew Plaintiffs and others similarly situated were performing this work and not being paid for it. Also, there were often lines at the handwashing stations, to get sanitary clothing and other protective equipment, and for clocking in.

72. The amount of time Plaintiffs and other similarly situated employees spent performing unpaid work was at least approximately ten to fifteen minutes, and upwards of 30 minutes or more each day, when accounting for all pre- and post-shift time, and work performed during unpaid lunches. This resulted in at least approximately 50 minutes to 1 hour and 25 minutes or more of unpaid overtime per collective/class member, per week.

## COLLECTIVE ACTION ALLEGATIONS

73. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

74. The collective that Plaintiffs seek to represent and for whom Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs are themselves members, is composed of and defined as follows:

> **All current and former hourly employees who performed work for Defendant, including those placed by temporary agencies, and who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and/or doff sanitary clothing and other protective equipment and who worked 40 or more hours during a workweek at any time since January 19, 2020, through final disposition of this matter. The requested collective excludes those with valid arbitration agreements.**

75. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

76. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## INDIANA CLASS ACTION ALLEGATIONS

77. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of themselves and a class of persons employed by Defendants in Indiana defined as:

> **All current and former hourly employees who performed work for Defendant in Indiana, including those placed by temporary agencies, and who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and/or doff sanitary clothing and other protective equipment and who worked 40 or more hours during a workweek at any time since January 19, 2021, through final disposition of this matter**. **The requested class excludes those with valid arbitration agreements.**

78. The Class is so numerous that joinder of all class members is impracticable. Plaintiffs are unable to state the exact size of the potential Class but, upon information and belief, aver that it exceeds 50 people.

79. There are questions of law or fact common to the Class including: whether Defendants failed to pay its employees for donning and doffing time, handwashing, associated travel, and boot

cleaning; whether Defendant failed to pay all overtime earned; and whether Defendant failed to pay the Class wages pursuant to the IWPS.

80. Plaintiffs will adequately protect the interests of the Class. Their interests are not antagonistic to but, rather, are in unison with, the interests of the Class members. Plaintiffs' counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Class in this case.

81. The questions of law or fact that are common to the Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Indiana Class, listed above, are common to the Class as a whole, and predominate over any questions affecting only individual Class members.

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

83. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

84. Plaintiffs and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, for associated travel, or for boot washing.

85. Plaintiffs and other similarly situated employees regularly worked 40 or more hours per workweek for Defendant.

86. Defendant's practice and policy of not paying Plaintiffs and other similarly situated employees for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, for associated travel, and for boot washing, resulted in Defendant's failure to pay Plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

87. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

88. As a result of Defendant's practices and policies, Plaintiffs and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
**(Indiana Wage Payment Statute Violations)**

89. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

90. Plaintiffs and the Class members have been covered by the IWPS, I.C. § 22-2-5-1, *et seq*.

91. Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." I.C. § 22-2-5-1(a).

92. Plaintiffs and the Class are entitled to damages equal to the amount of unpaid wages, along with an additional amount equal to two (2) times the amount of wages as liquidated damages, plus reasonable attorney's fees and costs. I.C. § 22-2-5-2.

93. Defendant violated the IWPS by not paying Plaintiffs and the Class members the amounts due for all wages to which they are entitled by operation of law.

94. Plaintiffs and the Class seek recovery of all lawful wages and damages due under the IWPS and do not seek recovery of any further amounts they may be owed under any collective bargaining agreement or any other potential source of entitlement, if applicable.

95. Plaintiffs and the Class have been harmed because they have not been paid all wages due, and harm continues because such wages remain unpaid.

96. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the IWPS.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all persons similarly situated, prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a Rule 23 class action;

C. Enter judgment against Defendant and in favor of Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Indiana Class;

D. Award Plaintiffs, the Opt-Ins who join, and the Indiana Class actual damages for unpaid wages;

E. Award Plaintiffs, the Opt-Ins who join, and the Indiana Class liquidated damages as provided under the FLSA and IWPS;

F. Award Plaintiffs, the Opt-Ins who join, and the Indiana Class pre-judgment and post-judgment interest at the statutory rate;

G. Award Plaintiffs, the Opt-Ins who join, and the Indiana Class attorneys' fees, costs, and disbursements; and

H. Award Plaintiffs, the Opt-Ins who join, and the Indiana Class further and additional relief as this Court deems just and proper.

Respectfully Submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (OH Bar 0086195)
1360 East 9th Street, Ste. 808
Cleveland, OH 44114
Telephone: (216) 230-2944
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com

Hans A. Nilges (OH Bar # 0076017)
7034 Braucher St NW, Suite B
North Canton, OH 44720
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email: hans@ohlaborlaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all claims so triable.

*/s/ Robi J. Baishnab*

*Counsel for Plaintiffs*